IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TAMMY F. RAUSCH,                )
    Plaintiff,             )
                           )       Case No. 7:21-cv-00476
v.                             )
                           )       By:    Michael F. Urbanski
ALTA CIMA CORPORATION,         )       Chief United States District Judge
    Defendant.             )

## MEMORANDUM OPINION

This matter is before the court on defendant Alta Cima Corporation's motion for summary judgment, ECF No. 21. Plaintiff Tammy Rausch filed an opposition, ECF No. 25, to which defendant replied, ECF No. 28. For the reasons explained herein, the court **GRANTS** defendant's motion for summary judgment.

## I. Factual Background

Rausch worked as a general manager for Alta Cima, an Arizona corporation, in the Rocky Mount, Virginia sales office from March 2019 to September 2020. Compl., ECF No. 1, at ¶ 9; Def. Mem. Supp. Summ. J., ECF No. 22, at 2. Rausch's direct superior was Regional Manager Dawn Sharpe, who reported to Chief Operating Officer Hilorie Johnson. Pl. Mem. Opp'n Summ. J., ECF No. 26, at 1.

Beginning in June 2020, Rausch began experiencing symptoms of pain, fatigue, brain fog, insomnia, memory loss, agitation, anxiety, and nausea. Compl., ECF No. 1, at ¶¶ 16–17. She was later diagnosed with fibromyalgia in September 2020. Id. at ¶¶ 16, 24. On June 10, 2020, Rausch's physician issued a letter recommending that Rausch not work more than 30 hours for the second half of June but did not indicate restrictions for July or August. Def.

Mem. Supp. Summ. J., Ex. C, ECF No. 22-3. Rausch told Sharpe about her physician's recommendation and Sharpe suggested that Rausch should leave work between 2:00pm and 3:00pm each day. Compl., ECF No. 1, at ¶¶ 20–21. Later, Rausch's physician wrote a second letter on August 18, 2020, excusing Rausch from work that day and explaining that he had "determined she [was] not able to work today but can return to work on Tuesday, September 1, 2020 part time (25-30 hrs per week) for two weeks." Dep. Ex. 9, ECF No. 22-10, at 9.

Then, on August 27, 2020, Rausch told Sharpe that she may need to take extended leave because her medical condition had worsened. Dep. Ex. 37, ECF No. 22-10, at 23. On August 31, Sharpe informed Rausch that the company would grant her request, but also explained that if she took leave, Alta Cima could not guarantee her position would remain open due to the small size of the company. Id. On September 1, 2020, Rausch's physician signed a work excuse form explaining that Rausch needed to take a leave of absence due to her condition for an indefinite period of time. Id. at 20. Rausch continued to work in some capacity after September 1, but on September 14, she was placed on unpaid leave, although she continued to receive health insurance coverage and commissions for homes she had sold before taking leave. Rausch Dep. Vol. I, ECF No. 22-8, at 168–69.

While Rausch was on medical leave, Alta Cima advertised for Rausch's position and selected Linda Saavedra to fill it. Saavedra Dep., ECF No. 22-5, at 9. Saavedra began working in that position on November 1, 2020. Id. On November 10, 2020, Rausch texted Sharpe that she planned to ask her physician whether she could return to work, stating she was "not 100%" but felt that she was "able to ease [her] way back into working." Pl. Mem. Opp'n Summ. J., ECF No. 26, at 7. She asked if a position would be open for her. Id. On November 11, 2020,

Saavedra requested to hire a new salesperson. Dep. Ex. 39, ECF No. 22-10, at 24. Rausch was not considered for the salesperson position because Alta Cima had never offered a part-time sales position. Johnson Dep., ECF No. 22-4, at 44–46; Sharpe Dep., Vol. I, ECF No. 26-3, at 118–19; Saavedra Dep., ECF No. 26-4, at 64. Each of Alta Cima's managers believe that sales positions at Alta Cima are time consuming, requiring salespersons to be in the office working full-time. Id. On November 24, 2020, Rausch's physician signed a statement releasing Rausch to work no more than 20 hours per week on a "flexible" schedule. Dep. Ex. 25, ECF No. 22-10, at 22. Rausch requested to return to Alta Cima as a Housing Consultant on a part-time flexible basis. Def. Mem. Supp. Summ. J., ECF No. 22, at 4. Her request was similarly rejected based on Johnson's assertion that Alta Cima had never had a part-time position. Johnson Dep., ECF No. 22-4, at 44–46; Sharpe Dep., Vol. I, ECF No. 26-3, at 118–19; Saavedra Dep., ECF No. 26-4, at 64.

On December 3, 2020, Johnson informed Rausch that her employment would be terminated as of December 4 but that she was eligible to reapply with the company. Dep. Ex. 17, ECF No. 22-10, at 19. After her termination, Rausch sent several text messages to Crystal Weaver, a project coordinator and Rausch's former subordinate at Alta Cima, asking her to send her a photo of the "PO Board," which displays the office's sales data, because she mistrusted Alta Cima's calculations of her commission payments. Def. Mem. Supp. Summ. J., Ex. B, ECF No. 22-2, at 2–3; Rausch Dep., Vol I, ECF No. 22-8, at 202–05. Weaver notified Saavedra about Rausch's text messages, who then brought it to the attention of Sharpe and Johnson on December 11, 2020. Dep. Ex. 59, ECF No. 22-10, at 28.

3

On January 1, 2021, Rausch's physician released her to return to full time work. Compl., ECF No. 1, at ¶ 38. Rausch informed Johnson that she was released to a full-time working schedule and applied for an open salesperson position on January 20, 2021. Id. at ¶¶ 39–40. Alta Cima did not rehire Rausch. Saavedra, with approval from Sharpe and Johnson, had excluded Rausch from consideration for the position. All three managers agreed that hiring Rausch as a salesperson to work under her replacement would result in internal tension. Furthermore, the team agreed that Rausch's improper attempts to convince Weaver to send her a photograph of sales data in December 2020, among other conduct, was unprofessional and disqualifying. Johnson Dep., ECF No. 22-4, at 33–39, 44–45, 77–78; Sharpe Dep. Vol. I, ECF No. 22-6, at 26–29; Vol II, ECF No. 22-7, at 170–75; Saavedra Dep., ECF No. 22-5, at 42–45. Rausch also applied for an open sales position on April 16 and May 16, 2021, but was denied. Compl., ECF No. 1, at ¶¶ 42–46.

On June 7, 2021, Rausch filed a charge of disability discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), alleging that she was discriminated against by Alta Cima based on her disability in violation of the Americans with Disabilities Act (ADA). Dep. Ex. 13, ECF No. 22-10, at 11. Her EEOC form indicated that the discrimination occurred from December 4, her date of termination, to June 7, the date of filing. Id. In her EEOC charge, Rausch alleged only that she was wrongfully terminated and denied reemployment because of her disability. Id. at 11–12. On June 25, 2021, the EEOC determined that it would not proceed further with their investigation, issuing Rausch a Notice of Right to sue letter. Id. On September 13, 2021, Rausch filed a four-count complaint in this court, alleging discrimination in violation of the ADA (Count I); failure-to-accommodate in violation

of the ADA (Count II); retaliation in violation of the ADA (Count III); and interference in violation of the ADA (Count IV). Compl., ECF No. 1, at ¶¶ 7–14. Defendant has moved for summary judgment on all counts. ECF No. 21.

## II. Legal Standard

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the

nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III. Counts II, III, and IV

Defendant argues that it is entitled to summary judgment on Counts II, III, and IV of the complaint as a matter of law because Rausch lacks standing to bring those claims. It argues that because these claims are outside the scope of her EEOC charge, Rausch did not fully exhaust her administrative remedies as required by the ADA.

### A. Standing Requirements

"Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the ADA incorporates that statute's enforcement procedures." Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 12117(a)). This includes the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court. Id. § 2000e-5(b), (f)(1). "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). The purpose of this requirement is to put an employer on notice of an alleged violation. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) (citing EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1186 (4th Cir. 1981)). The plaintiff may file a subsequent civil suit so long as the claims are "reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000).

"[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge." Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022) (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005)). If any claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. (quoting Chacko, 429 F.3d at 509). Furthermore, a claim is not exhausted if "the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the [filed] claim encompasses another type—such as discrimination in pay and benefits." Id. (quoting Chacko, 429 F.3d at 509). See Stewart v. Iancu, 912 F.3d 693, 705 (4th Cir. 2019) ("Only those discrimination claims stated in the initial

7

charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [] suit.").

In her EEOC charge, Rausch alleged only disability discrimination and listed the discrimination as occurring between December 4, 2020, when her employment was terminated, and June 7, 2021, the EEOC filing date. Dep. Ex. 13, ECF No. 22-10, at 11. In the narrative of her charge, Rausch mentioned only that she believes she was terminated from employment and denied rehiring due to disability discrimination in violation of the ADA. Id. at 11–12. The EEOC charge form contains several boxes to choose from under the "discrimination based on" section, with options including "disability," "retaliation," and "other (specify)." Id. Rausch did not check the box for "retaliation" or for "other" to specify a failure-to-accommodate or an interference charge, nor did she discuss any facts that are reasonably related to retaliation, failure-to-accommodate, or interference while describing her discrimination charge on the EEOC form. Id. Accordingly, the court finds that Rausch did not adequately exhaust her administrative remedies for Counts II, III, and IV, and will take each in turn.

## B. Failure-to-Accommodate (Count II)

In her complaint, Rausch alleges that Alta Cima failed to accommodate her disability while she was still employed by "subjecting her to unreasonable and burdensome return-to-work requirements" and "failing to appropriately respond to—and also denying—[her] return-to-work requests." Compl., ECF No. 1, ¶¶ 75–76.  She claims also that Alta Cima "refused to allow [her] to work from home," "ceased the accommodation dialogue with [her] and instead took away her access to her email and payroll keeping system," and "failed to consider having

[her] work from home or at a reduced schedule or moving her to a sales position in the summer and fall of 2020." Dep. Ex. 4, ECF No. 22-10, at 4.

Based on the content of her EEOC charge, Rausch's failure-to-accommodate claim has not been exhausted. First, these allegations describe events that occurred within the summer and fall of 2020, predating the December 4, 2020, to June 7, 2021 timeframe Rausch provided in her EEOC charge. Def. Mem. Opp. Summ. J., ECF No. 25, at 2–3, 17–23. The failure-to-accommodate facts thus "exceed the scope" of the EEOC charge. Walton, 33 F.4th at 172; see Chacko, 429 F.3d at 505 (explaining that where the timeline in a claim from a complaint differs from that listed on an EEOC charge, the claim is not exhausted). Additionally, she did not articulate "failure-to-accommodate" in her charge. Such a claim is discrete from discriminatory discharge—the claim she did include—because it requires elements that fundamentally differ from discriminatory discharge claims. See Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 959–60, n.2 (4th Cir. 2021) (noting that discriminatory discharge claims, which are subject to the McDonnell-Douglas burden shifting framework while failure-to-accommodate claims are not, as a separate type of disability discrimination). Construing the EEOC charge as liberally as possible, Rausch's timeline and narrative do not contain any facts or allegations concerning defendant's conduct prior to her termination. Thus, her failure-to-accommodate claim is unexhausted.

Exhaustion notwithstanding, Rausch's failure-to-accommodate claim cannot survive Alta Cima's motion for summary judgment. She primarily argues in her failure-to-accommodate claim that the company did not engage in a good faith effort to accommodate her, specifically with regard to her November 10, 2020, text that stated while

she was "not 100%," she could "ease [her] way back into working." Pl. Mem. Opp'n Summ. J., ECF No. 26, at 7. However, this point mischaracterizes the November 10 text. Earlier in that text, Rausch stated that she would "ask [her physician] if [she] could return to work as a part-time Housing Consultant "if [she was] released." Id. Put in context, Rausch's text places the restrictions on her ability to work on her physician, not on Alta Cima, and when she was released to work in a limited fashion two weeks later, the part-time position she requested did not exist because, as Johnson explained, Alta Cima had never hired a part-time Housing Consultant. Id. at 5.

Rausch effectively contends that failing to create a part-time position for her subjects Alta Cima to liability for failing to engage with her in an interactive process to identify a reasonable accommodation. Pl. Memo. Opp'n Summ. J., ECF No. 25, at 18-23. ADA regulations provide that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (2012). The duty to engage in the interactive process is "generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346–47 (4th Cir. 2013). However, ADA does not require an employer to create a nonexistent position as an accommodation. Perdue, 999 F.3d at 960 (citing Laird v. Fairfax Cnty., 978 F.3d 887, 892 n.3 (4th Cir. 2020)). As the Fourth Circuit has explained, "the interactive process 'is not an end in itself' but a 'means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'" Perdue, 999 F.3d at 962 (quoting Wilson v.

10

Dollar Gen. Corp., 717 F.3d 337, 347 (4th Cir. 2013)). "So 'an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position.'" Id. (quoting Jacobs v. N.C. Admin. Off. of Cts., 780 F.3d 562, 581 (4th Cir. 2015)).

Here, Rausch admitted that she was unable to work the full-time schedule that the sales position demanded. Rausch Dep., Vol. I, ECF No. 22-8, at 180–81. Thus, she could not perform the essential functions of the position she sought. Because Alta Cima was not required to create a part-time flexible position for Rausch, any failure to engage in the interactive process is inconsequential, requiring summary judgment on Rausch's failure-to-accommodate claim.

### C. Retaliation (Count III)

In Count III, Rausch alleges that defendant retaliated against her by "subjecting her to unreasonable and burdensome return-to-work requirements due to her disability," "denying her return-to-work requests," "treating her . . . less preferably than similarly situated non-disabled employees [that] result[ed] in termination from employment," and "refusing to consider her for subsequent jobs, for which she was qualified for, and Alta Cima had openings for." Compl., ECF No. 1, ¶¶ 91–92. However, based on her EEOC charge form, Rausch's claim was not exhausted.

First, Rausch did not mark the retaliation box on the EEOC charge form; she marked only the "disability" box on the form. Dep. Ex. 13, ECF No. 22-10, at 11. Second, her narrative does not mention retaliation, nor does it include facts that support a retaliation theory. Id. In

11

fact, her form states only that she believes she was terminated and denied rehiring "because of her disability." Id. Taken together, these demonstrate a lack of exhaustion.

This finding is consistent with Fourth Circuit precedent. In Cowgill v. First Data Technologies, Inc., the court found that plaintiff had not exhausted her retaliation claim because, "[a]s an initial matter, Cowgill did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation." Cowgill, 41 F.4th 370, 384 (4th Cir. 2022) (citing Miles, 429 F.3d at 492). In that case, plaintiff alleged nothing in her charge that would imply retaliation to give defendant any possible notice of a retaliation claim. See id. (finding no exhaustion when the "events [described in the EEOC form] do not necessarily imply that [employer] was motivated by a retaliatory impulse"); see also Miles, 429 F.3d at 492; Chacko, 429 F.3d at 509 ("[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will [] be procedurally barred.").

While Rausch argues that she has standing to pursue this claim, the cases on which she relies are distinct from this case. She points first to Sarco v. 5 Star Financial, LLC, in which this court permitted a hostile work environment claim to go forward despite the plaintiff not mentioning it in his EEOC charge. Sarco, 5:19-cv-86, 2020 WL 5507534, at *9 (W.D. Va. Sept. 11, 2020). In that case, the court explained that "the exhaustion requirement should not become a tripwire for hapless plaintiffs," id. at *27 (quoting Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012)), and that "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading," id. (citing Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988)).

However, the plaintiff in <u>Sarco</u> "allege[d] facts reasonably related to a hostile work environment claim" in his EEOC charge, including being bullied about his sexual orientation. <u>Id.</u> at *9. That case involved the reasonable inference that bullying in the office gave rise to a hostile work environment claim. In contrast, there are no facts in Rausch's complaint that give rise to an inference of retaliation.

Similarly, Rausch's reliance on <u>Coffey v. Tyler Staffing Services, Inc.</u> is misplaced. In that case, which involved allegations of harassment, the "bulk of the activity alleged in the EEOC and the Second Amended Complaint overlap; indeed, much of the harassment occur[ed] over the course of the same workday." <u>Coffey</u>, 7:19-cv-015, 2020 WL 3869567, at *5 (W.D. Va., July 9, 2020). The conduct described in plaintiff's EEOC charge "put [the employer] on ample notice of the nature and character of the hostile work environment claim." <u>Id.</u> The court explained that, in cases of exhaustion-related standing, the ultimate question is whether the "EEOC charge and the subsequent investigation are sufficient to put the defendant on notice of claims brought and sufficient to allow the EEOC to attempt conciliation." <u>Id.</u>

These cases are distinct from the current case. In Rausch's EEOC charge, she neither checked the "retaliation" box nor referred to retaliation as a theory of liability anywhere within her EEOC charge. And construing her EEOC charge in the light most favorable to Rausch, there are no facts to support an inference that Alta Cima was put on notice of a possible retaliation claim. Therefore, the court finds that Rausch failed to exhaust her administrative remedies and does not have standing to bring her retaliation claim.

**D. Interference in Violation of the ADA (Count IV)**

Finally, as with her retaliation and failure-to-accommodate claims, Rausch lacks standing to pursue her interference claim. In her complaint, Rausch alleges that Alta Cima interfered with her ADA rights "by refusing to appropriately engage in a dialogue with her in a good faith basis regarding her return to work and treating [her] differently, and less favorably, than similarly situated employees" and "by at first allowing her to go home at 2-3 pm but then still requiring her to work from home and come in on her days off." Compl., ECF No. 1, at ¶¶ 106–07. She also alleges that Alta Cima "would not have refused Ms. Rausch's return to work but for her disabilities or being regarded as disabled by Alta Cima," and that her "constructive termination from employment occurred under circumstances that raise a reasonable inference of unlawful interference based upon [her] disabilities." Id. at ¶¶ 108–09. In response to Alta Cima's interrogatories, she stated that Alta Cima discriminated against her by "[i]nterfering and/or retaliating against [her] requested accommodation by threatening or attempting to intimidate [Rausch] into not requesting short term leave in summer of 2020 . . . ." Dep. Ex. 4, ECF No. 22-10, at 3. She alleges that Dawn Sharpe indicated that requesting short term leave "would not go well for [Rausch]" and that Sharp pressured her into working more than her reduced work schedule. Id.

Like retaliation and failure-to-accommodate claims, interference claims are a distinct cause of action from a wrongful discharge or failure to rehire claim. See Kelly v. Town of Abingdon, No. 1:19-cv-00032, 2020 WL 2553614, at *7 (W.D. Va. May 20, 2020) (stating that that while plaintiff's "allegations may support his claims of retaliation and failure to accommodate, they are inadequate to support his interference claim, which is a separate and distinct legal theory"). Because Rausch limited the timeline of her EEOC charge to begin upon

her firing and does not state anywhere in her narrative facts giving rise to an interference claim, this claim is similarly unexhausted. <u>Chacko</u>, 429 F.3d at 506. Therefore, Rausch does not have standing to pursue her interference claim.

## IV. Count I: Discrimination in Violation of the ADA

The court has left to consider the two claims Rausch did include in her EEOC charge: the discriminatory discharge on December 4, 2020, and the failure to rehire her from January 2021 to March 2021. For reasons discussed below, taking all facts in the light most favorable to Rausch, summary judgment is appropriate because she has not made out a prima facie case of discrimination on either charge.

### A.   Discriminatory Discharge Claim

To survive summary judgment on a discriminatory discharge claim, a plaintiff must "produce evidence sufficient to demonstrate that (1) [she] 'was a qualified individual with a disability'; (2) [she] 'was discharged'; (3) [she] 'was fulfilling [her] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination.'" <u>Reynolds v. Am. Nat'l Red Cross</u>, 701 F.3d 143, 150 (4th Cir. 2012) (quoting <u>Rohan v. Networks Presentations LLC</u>, 375 F.3d 266, 273 n.9 (4th Cir. 2004)). She must ultimately demonstrate that her disability "was the but-for cause" of her termination. <u>Crews-Sanchez v. Frito Lay, Inc.</u>, No. 6:21-cv-00030, 2022 WL 2792207, at *8 (W.D. Va., July 15, 2022). When a plaintiff relies on circumstantial evidence to support her ADA claim, courts apply the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, she must establish her prima facie case that she is disabled, that she was a qualified individual, and that she suffered an adverse

employment action due to her disability. Laird, 978 F.3d at 892 n.4. The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the discharge. Jacobs v. N.C. Admin. Office of Cts., 780 F.3d 562, 575 (4th Cir. 2015). It then shifts back to the plaintiff to demonstrate that the "asserted justifications are pretextual." Id. at 575-76.

Rausch cannot show that, at the time of her discharge, she was a "qualified individual" for the position from which she was terminated. Rausch Dep. Vol. I, ECF No. 22-8, at 185. On September 1, 2020, Rausch's physician signed a work excuse form stating that Rausch would be unable to work in any capacity without including a projected end date. Dep. Ex. 9, ECF No. 22-10, at 20. Previously, Sharpe had informed Rausch that if she were to take indefinite medical leave, the company could not guarantee her position because it needed a general manager. Id. at 23. After Rausch went on unpaid medical leave, Alta Cima did indeed hire Saavedra to replace Rausch as general manager of the Rocky Mount office, who began working in that position on November 1, 2020.

Rausch does not contest that from the time she was placed on medical leave on September 14, 2020, until she was released by her physician for full time work on January 1, 2021, she was not qualified to work the full-time, in-office schedule required for either the general manager position or a full-time sales position. Rausch Dep., Vol. I, ECF No. 22-8, at 180–81. Under the ADA, an individual must be able to "perform the essential functions of the employment position" they seek to hold "with or without reasonable accommodation" in order to be "qualified." 42 U.S.C. § 12111(8). Essential functions of an employment position are those that "bear[] more than a marginal relationship to the job at issue." Elledge v. Lowe's Home Ctrs., LLC, 979 F.3d 1004, 1009 (4th Cir. 2020) (citations omitted).

16

The ADA further requires that, when assessing qualification, "consideration shall be given to the employer's judgment." 42 U.S.C. § 12111(8). An employer's business judgment about a position's essential functions "belongs, in the first instance, to the employer . . . [and] merits considerable deference from the courts." Elledge, 979 F.3d at 1009 (internal quotations omitted). Here, each of Alta Cima's managers who participated in hiring decisions involving Rausch agrees that both the general manager position and the sales positions are rigorous, time-consuming jobs that require full-time work in the office. Johnson Dep., ECF No. 22-4, at 44–46; Sharpe Dep., Vol. I, ECF No. 26-3, at 118–19; Saavedra Dep., ECF No. 26-4, at 64. Rausch herself agreed that she could not perform any position full time until January 2021, after her termination on December 4, 2020. Rausch Dep., Vol. I, ECF No. 22-8, at 180–82, 185–86.

Rausch instead argues that when she was released to work part-time on November 24, 2020, she could still perform the essential functions of the sales position on a flexible, less intensive basis. She alleges that "[t]he job description for a sales person in Rocky Mount does not contain a full-time requirement." Pl. Memo. Opp'n Summ. J., ECF No. 25, at 21. The ADA requires the court to consider "an employer['s] prepared [] written description before advertising or interviewing applicants for the job . . . [as] evidence of the essential functions of the job." 42 U.S.C. § 12111(8). However, the job description for Alta Cima's sales position includes a salary and benefits typically provided only to full-time employees. Dep. Ex. 58, ECF No. 22-10, at 26. It also requires employees to work Saturdays, and specifically states "[a] typical schedule includes one day off during the week and Sunday." Id. No reasonable reader of the sales position's job description could interpret the description as permitting of a part-

time flexible schedule. When Rausch requested a part-time flexible sales position in late November, Alta Cima did not and had never provided such a position. As discussed in Part III.B, the ADA does not require a company to create a position that does not exist for a disabled employee as an accommodation. Perdue, 999 F.3d at 960 (quoting Laird, 978 F.3d at 892 n.3 (4th Cir. 2020)).

Therefore, because Rausch could not fulfill the full-time requirements of either the general manager or sales positions at the time of her discharge, she did not meet the essential functions required for the position and is not a "qualified person with a disability." As a result, she cannot succeed as a matter of law on her wrongful discharge claim.

### B. Failure to Rehire Claim

To succeed on a failure to rehire claim under the ADA, a plaintiff must show that she "(1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination." Hurd v. Cardinal Logistics Mgmt. Corp., No. 7:17-cv-00319, 2018 WL 4604558, at *11 (W.D. Va. Sept. 25, 2018) (citing Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005)). When a plaintiff relies on circumstantial evidence, courts apply the McDonnell Douglas burden-shifting framework. See Part IV.A.

Rausch's claim for failure to rehire fails for two reasons. First, Rausch cannot make out a prima facie case for disability discrimination because she was not disabled for the duration of time she alleges that Alta Cima discriminatorily failed to rehire her. "[T]he date of an adverse employment decision is the relevant date for determining whether a plaintiff is a qualified

18

individual with a disability." EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000) (internal quotations omitted). Whether a plaintiff was disabled on the date of such adverse employment action is "a question of law for the court." Coghill v. Bd. of Educ., No. GJH-14-2767, 2017 WL 1049470, at *5 (D. Md. March 17, 2017).

In January 2021, Rausch was released by her physician for full-time employment, with no restrictions of any kind on her ability to work. Rausch does not contest that she was not disabled at the time she applied for any of Alta Cima's open positions in 2021. Rausch Dep., Vol. I, ECF No. 22-8, at 32–34; 187–88. Without deciding whether Rausch has satisfied the third and fourth elements required for a prima facie case of disability discrimination, the court concludes that because she was not disabled within the meaning of the ADA, Rausch fails on the first element and cannot make a prima facie case of disability discrimination on her claim.

However, even if Rausch were able to establish a prima facie case of disability discrimination, she cannot meet her burden under the McDonnell-Douglas framework to rebut the legitimate nondiscriminatory reasons that Alta Cima provided for why Rausch was not rehired. To prove a reason for failure to rehire is a pretext for discrimination, a plaintiff must show "both that the reason was false, and that discrimination was the real reason." Crews-Sanchez, 2022 WL 2792207, at *10 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (internal quotations omitted)).

All three managers at Alta Cima who participated in the decision to disqualify Rausch from the open sales positions in 2021 testified that they found Rausch's attempted coercion of a former subordinate to send her photos of Alta Cima's sales data unprofessional and inappropriate. Johnson Dep., ECF No. 22-4, at 33–39, 44–45, 77–78; Sharpe Dep. Vol. I, ECF

No. 22-6, at 26–29; Vol II, ECF No. 22-7, at 170–75; Saavedra Dep., ECF No. 22-5, at 42–45. Saavedra also specifically noted that she felt it was generally bad practice to hire an employee for a position subordinate to the one they had formerly filled, with which both managers agreed. Saavedra Dep., ECF No. 22-5, at 21–23, 57–58. Both reasons are legitimate and adequate justifications for the managers' collective decision not to rehire Rausch for any sales position. Rausch has not provided evidence to show that either reason is false, or those reasons were a pretext for disability discrimination. Indeed, Saavedra, who made the initial decision not to consider Rausch for a sales position, was unaware at the time that Rausch had previously had a medical disability or that the disability was the reason for her leave of absence in the preceding months. Saavedra Dep., ECF No. 22-5, at 9, 22, 33–36.

Because Rausch cannot make out a prima facie case of discriminatory failure to rehire, nor can she rebut the legitimate nondiscriminatory reasons Alta Cima has provided under the McDonnell-Douglas framework, the court finds that summary judgment is appropriate.

## V. Conclusion

For the foregoing reasons, Alta Cima's motion for summary judgment is **GRANTED**. Rausch does not have standing to pursue her claims of retaliation, failure-to-accommodate, or interference, which she failed to administratively exhaust. On her wrongful discharge and failure to rehire claims, no genuine issue of material fact exists to support Rausch's allegations that she was discriminated against based upon her disability. Accordingly, defendant Alta Cima's motion for summary judgment will be **GRANTED** in its entirety and this case **DISMISSED**. An appropriate order will be entered.

Entered: February 23, 2023


Michael F. Urbanski
Chief United States District Judge

21